# IN THE COURT OF APPEALS OF IOWA

No. 15-1210
Filed March 9, 2016

IN RE THE MARRIAGE OF SARA M. NICOLA
AND ROBERT G. NICOLA

Upon the Petition of
SARA M. NICOLA,
n/k/a SARA M. STOLLEY,
        Petitioner-Appellant,

And Concerning
ROBERT G. NICOLA,
        Respondent-Appellee.
-----------------------------------------------------
SARA M. NICOLA, n/k/a SARA M. STOLLEY,
        Plaintiff,

v.

IOWA DISTRICT COURT
FOR SCOTT COUNTY,
        Defendant.
_____

        Appeal from and certiorari to the Iowa District Court for Scott County,

John D. Telleen, Judge.

        Stolley appeals the district court's denial of her modification application

and seeks review of the district court's rulings on the parties' respective contempt

applications. **AFFIRMED AS MODIFIED; WRIT ANNULLED.**

        Robert S. Gallagher and Peter G. Gierut of Gallagher, Millage &

Gallagher, P.L.C., Bettendorf, for appellant.

        Nathan M. Legue of Cartee & McKenrick, P.C., Davenport, for appellee.

        Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Sara Stolley appeals the district court's denial of her application for modification of the dissolution decree and seeks review of the parties' respective contempt applications. Stolley claims the decree should be modified to require supervised visitation for her ex-husband, Robert Nicola, with their minor children. She further claims the district court wrongfully found her in contempt for interfering with Nicola's visitation rights and failed to find Nicola in contempt for improperly claiming one of the children as an exemption on his 2014 tax return.

## I.      Background Facts and Proceedings

Stolley and Nicola were divorced on August 28, 2014. They have two minor children: A.N., born in 2011, and L.N., born in 2013. Pursuant to the decree, the court awarded the parents joint legal custody of the children, and Stolley was awarded physical care. Nicola received visitation with the children twice per week on his days off of work, with the location of pick-up and drop-offs stipulated in the decree. He was also responsible to inform Stolley of his work schedule so visitations could be arranged. The decree forbade either party from threatening or generally harassing the other party and restricted contact between the parties to text or email communications about the children unless an emergency regarding the children were to arise.

Pursuant to the decree, each parent was entitled to claim one child as an income tax dependency exemption, unless Nicola failed to remain current in his child support obligation, at which point Stolley could claim both children. On September 18, 2014, the decree was modified by a nunc pro tunc order, which entitled Stolley to claim both children for the 2014 tax year.

From the entry of the decree until September 29, 2014, Nicola did not exercise his right to visitation. On September 30, Nicola requested a visitation arrangement that was not in accordance with the decree, which Stolley declined. In the following four months, Nicola requested visitation six more times—all of which Stolley granted and all but one of which Nicola exercised. According to Stolley, at one of these custody exchanges, when Nicola returned, L.N. was not properly buckled into the car seat. Stolley further reported that, at two subsequent visitation exchanges, Nicola failed to secure L.N.'s car seat to the car and, on one of these occasions, improperly buckled A.N. into the car seat.

From January 23 until March 6, Nicola did not contact Stolley regarding visitation. Nicola testified he quit texting Stolley because it irritated her. He indicated first that he continued to show up for visitations during this time period, but later stated that he did not physically show up at the designated pick-up locations because it was not necessary.

On March 6, Nicola requested to see the children the following day. Stolley responded she already had plans with the children. She then stated that any future arrangements could be discussed in court. Stolley informed Nicola she intended to seek contempt findings based on Nicola's wrongful claim of A.N. on his 2014 tax return and his failure to properly secure the children in their car seats. She further stated she intended to seek court intervention to prevent Nicola's girlfriend from having access to the children because of the girlfriend's "history." With regard to his 2014 tax filing, Nicola responded he was unaware that Stolley was entitled to claim both children, and he was willing to refund Stolley for any resulting monetary losses. Shortly thereafter, Nicola contacted

one of Stolley's coworkers by Facebook, seeking his input on what action he should take based on Stolley's refusal to allow him visitation.

On March 13, Nicola attempted to schedule visitation with the children the following day. Stolley indicated it was not his scheduled visitation day and that she had to work. Instead, she offered to bring the children one time that week to visit with him at a designated restaurant. On March 19, Nicola again attempted to schedule visitation with the children the following day; Stolley informed Nicola she would not allow him to drive the children and that she needed two weeks' notice to schedule a visitation. On March 21, Nicola requested visitation with the children on April 4. Stolley declined, citing a work schedule conflict. Nicola attempted to move the visitation to April 3. No visitation with the children resulted. On March 25, Nicola filed his application for order to show cause based upon Stolley's withholding of visitation.

On April 6, Nicola again requested to see the children. Through coordination of counsel, Nicola had visitation with his children on April 11, 2015, which Stolley supervised. Stolley filed her application to modify the dissolution decree on April 14. On May 11, the parties met to exchange custody, and Stolley appeared with a uniformed, on-duty police officer. When Nicola refused to allow Stolley to inspect the car seats in his vehicle, the police officer assisted Nicola in properly securing the children. Stolley testified visitation was attempted the following day, but that she left with the children when Nicola refused her admission to his vehicle. On May 18, Nicola appeared for a visitation but Stolley never showed. Stolley testified there was some confusion between the parties, as she had appeared on May 17 instead. She also claimed she had not been

informed where the visitation was to take place on May 18. The parties attempted at least three more visitation exchanges in May, all of which were denied when Nicola refused to allow the individual dropping off the children to inspect the car seats in his vehicle.

A settlement conference took place on May 28. At trial, Stolley testified it was her understanding Nicola had agreed at the settlement conference to allow her to check the car seats at the next exchange. On May 29, Nicola refused the inspection, stating he already had the car seats inspected by—and upon inspection tightened by—the fire department. Based on his refusal, Stolley withheld visitation. On May 28, Stolley filed an application for rule to show cause. The parties' disputes came before the district court for trial on June 19, 2015.

After hearing all issues, the district court entered an order granting Nicola's application for order to show cause and denying Stolley's application for rule to show cause and application to modify the decree. The district court sentenced Stolley to serve thirty days in jail and pay a fine of $500; however, the sentence and fine were suspended, with Stolley able to purge her contempt of court by following the decree's visitation terms and providing twenty-four makeup visitations—at times selected in writing by Nicola—within the next six months.

Stolley challenges all three rulings of the district court.

## II.    Scope and Standard of Review

Our review of the district court's modification decision is de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the factual findings of the district court, especially its assessment of the credibility

of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). Case precedent has little value as we must base our decision on the particular circumstances of the case before us. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Our overarching consideration is the best interests of the children. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

We review contempt rulings to determine whether substantial evidence supports the district court's judgment. *See Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 68 (Iowa 2010). "[C]ontempt must be established by proof beyond a reasonable doubt." *Id.* "The district court's factual findings will be overturned if they lack substantial evidentiary support, which is 'such evidence as could convince a rational trier of fact.'" *Id.* (citation omitted). We are not bound by the district court's conclusions of law and "exercise unfettered review of the court's application of the law." *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995).

### III. Nicola's Contempt Action

To be found guilty of contempt, an individual must have willfully violated a court order or decree. *Jacobo*, 526 N.W.2d at 866. There is no dispute, and the facts clearly demonstrate, that the parties were bound by the divorce decree and that Stolley disobeyed the decree when she interfered with Nicola's right to visitation with the minor children. *See id.* (noting the contemner must first be shown to have a duty to obey a court order and to have failed to perform that duty).

Stolley contends, however, that her violation was not willful. *See id.* (stating that after a failure to perform a duty is established, "[t]he burden then

shifts to the contemner to produce evidence which suggests he or she did not willfully violate the order or decree at issue"). Willful disobedience is "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemnor had the right or not." *Id.* (citation omitted). Stolley asserts her violation was not willful because of her safety concerns for the children based on Nicola's failure to properly secure them in their car seats.

In support of her claims, Stolley relies on *Ferguson v. Iowa District Court*, No. 07-1319, 2008 WL 1884007 (Iowa Ct. App. Apr. 30, 2008). In *Ferguson*, the father withheld custody of his infant daughter from her mother because of his concerns about the safety of the child based on reports the mother was abusing drugs or alcohol and was exhibiting hostile and combative behavior. 2008 WL 1884007, at *1. The consent order governing the custody of the minor child explicitly required the parents to abstain from the use of alcohol or illegal drugs while the child was in either parent's care. *Id.* We found the father's concerns about the safety of the child to be genuine. *Id.* at *3. We further found the consent order was unclear as to what measures a party could take when the other party was in violation of the substance abuse provision. *Id.* Based on the father's valid concerns and the ambiguity of the order, we concluded the mother had failed to meet her burden to show the father willfully violated the decree. *Id.*

Unlike in *Ferguson*, the order at issue is not ambiguous or uncertain. *See Bevers v. Kilburg*, 326 N.W.2d 902, 904 (Iowa 1982) (indicating the available defenses for a contempt claim are "indefiniteness or uncertainty of the order" and

the "absence of willfulness in disobeying the order"). While Stolley may have held legitimate concerns regarding Nicola's ability to properly secure the girls in their car seats, she unilaterally denied Nicola access to the children in March. On March 6, Nicola requested visitation, which Stolley denied because she and the children already had plans. Nicola then requested alternative dates from Stolley, which she failed to provide. Instead, she threatened to file a contempt action. On March 13, Nicola again contacted Stolley attempting to schedule visitation with A.N. and L.N. Stolley offered him only a single visitation during the next week. We find substantial evidence to support the district court's determination that Stolley acted in willful disobedience of the dissolution decree when she unilaterally denied Nicola the full visitation secured to him under the decree.

### IV.    Stolley's Modification Request

Generally, a court cannot modify the custody and care provision of a dissolution decree unless "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). However, "[a] different, less demanding burden applies when a parent is seeking to change a visitation provision in a dissolution decree." *Brown*, 778 N.W.2d at 51. "A parent seeking to modify visitation must only establish 'that there has been a *material change in circumstances* since the decree and that the requested change in visitation is in the best interests of the children.'" *Id.* at 51–52 (citation omitted).

In reaching our determination, the court bears in mind that the goal of visitation is to allow both parents "maximum continuing physical and emotional contact." Iowa Code § 598.41(1)(a) (2015). We do not place restrictions on a parent's visitation unless the visitation is likely to cause direct physical harm or significant emotional harm. *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994).

Here, Stolley seeks both to limit Nicola's time with the children—by eliminating his overnight, holiday visitation—and to place conditions upon his time with the children by requiring that all visitations be supervised. In her appeal, Stolley alleges a material change in circumstance exists based upon Nicola's failure to exercise his right to visitation or provide Stolley his work schedule, his harassment of Stolley, and his inability to properly secure the children in their car seats.

We conclude, as did the district court, that Stolley has failed to show the children will be subjected to direct physical harm or significant emotional harm sufficient to justify the modification of Nicola's visitation rights. First, Stolley's request to limit Nicola's overnight, holiday visitation was premised upon Nicola's alleged failure to maintain safe and stable housing for the children. Stolley has not maintained this argument on appeal and, regardless, the record does not support Stolley's contentions. Regarding supervised visitation, neither Nicola's failure to exercise the full breadth of his visitation rights, nor his alleged harassment of Stolley, demonstrates the requisite material change in circumstances. The court is mindful that both law and common sense require a parent to adequately secure children in car seats and that a more consistent

pattern of visitation exercised by Nicola would ordinarily better serve the children. However, the evidence before the court does not rise to the requisite material change in circumstances nor impose the direct physical or emotional harm needed to justify deviation from the general presumption that liberal visitation rights are in the best interests of the children. *See In re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa Ct. App. 1993). Accordingly, the finding of the district court is affirmed.

### V. Stolley's Contempt Action

On appeal, Stolley avers the district court erred by failing to find Nicola in contempt for wrongfully claiming A.N. on his 2014 income tax return. There is no dispute the nunc pro tunc order enabled Stolley—and not Nicola—to claim both minor children on her 2014 tax returns. The undisputed evidence further establishes that Nicola violated this order by claiming A.N. on his 2014 income tax return. The district court held, however, that this violation was not willful, as Nicola was unaware of the nunc pro tunc order since his attorney had failed to provide it to him. Thus, the district court found Nicola was not in contempt but ordered him to cure the error either by executing the necessary paper work or by offsetting the amount Stolley owes in attorney fees by any amount she should have received from claiming A.N. on her taxes.

We defer to the district court's factual findings on the credibility of witnesses. *See Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010). This is because, "[a]s the original trier of fact, the district court was in a markedly better position to judge the credibility" of the witness than our court on appeal. *Id.* The district court found Nicola's testimony regarding the cause of his

error, in addition to his immediate attempt to cure the error, credible. Substantial evidence of record supports this finding. Accordingly, we affirm.

## VI.    Trial Attorney Fees

In modification proceedings, "the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. Similarly, in a contempt action, "the costs of the proceeding, including reasonable attorney's fees, may be taxed against" the party found in contempt. Iowa Code § 598.24. The district court awarded $5120 as the amount of attorney fees incurred by Nicola "in enforcing his right to visitation that was wrongfully withheld and in defending the meritless Application to Modify." The district court also awarded an additional $1000 for the day of trial. Stolley asserts the district court erred by failing to stipulate what portion of the fees applied to the contempt action unsuccessfully brought against Nicola, as opposed to the fees incurred in successfully defending the modification and successfully bringing a contempt action against Stolley. Stolley further argues the court erred in making its determination without a breakdown of the fees and without evidence of the parties' financial status and ability to pay.

The district court is not required to obtain a breakdown of fees before making an award. *See In re Marriage of Krone*, 530 N.W.2d 468, 472 (Iowa Ct. App. 1995). Further, while the district court did not specifically discuss the respective abilities of the parties to pay, the dissolution decree was before the district court and specified the parties' respective annual incomes as of the date of dissolution on August 24, 2014: Stolley made approximately $65,568.19, and Nicola earned approximately $50,158.14.

However, the district court did not have discretion to award attorney fees to Nicola for successfully defending the contempt action brought against him. *See* Iowa Code § 598.24; *In re Marriage of Shaman*, No. 14-0410, 2014 WL 7343748, at *2 (Iowa. Ct. App. Dec. 24, 2014) ("[S]ection 598.24 does not permit courts to award attorney fees to a party defending against a contempt action."). While the court indicated the fees were awarded for the successful prosecution of contempt and the successful defense of the modification, the court awarded the full amount of attorney fees incurred, thereby assigning no amount of expense to the third action. Moreover, the fees awarded "must be fair and reasonable." *In re Marriage of Witten*, 672 N.W.2d 768, 784 (Iowa 2003). Upon our review of the record, the outcome of the proceedings, and the relative income of the parties, we modify the district court attorney fees award from $6120 to a total of $4500.

## VII.    Appellate Attorney Fees and Court Costs

Nicola seeks attorney fees for this appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion. *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). We consider the needs of the parties, the ability of the parties to pay, and whether a party was obligated to defend the decision of the trial court on appeal. *Id.* Although Stolley was not successful on appeal, her claims are not without merit; and we are mindful of the attorney fees awarded for the district court proceedings. We determine that the parties should pay their own attorney fees for this appeal. Costs of this appeal are assessed to Stolley.

**AFFIRMED AS MODIFIED; WRIT ANNULLED.**