# IN THE COURT OF APPEALS OF IOWA

No.16-1412
Filed April 5, 2017

IN RE THE MARRIAGE OF KATHERINE S. KOONTZ
AND DAMON M. KOONTZ

Upon the Petition of
**KATHERINE S. KOONTZ, n/k/a KATHERINE S. HARPENAU,**
    Petitioner-Appellant,

**And Concerning**
**DAMON M. KOONTZ,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

Damon Koontz appeals from the district court's modification of the December 1, 2010 stipulation and decree dissolving his marriage to Katherine Koontz. **AFFIRMED.**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant.

Joseph G. Basque, Iowa Legal Aid, Council Bluffs, for appellee.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

Damon Koontz appeals from the district court's modification of the December 1, 2010 stipulation and decree dissolving his marriage to Katherine Koontz. Damon contests the district court's order that he reimburse Katherine for the high school education costs of one of their children, the child-support calculation, and the award of attorney fees. Because we find the district court properly ordered Damon to pay one-half of the high school expenses, equitably calculated the modified child-support amount, and did not abuse its discretion in awarding attorney fees to Katherine, we affirm.

**I. Background Facts & Proceedings.**

Damon and Katherine were married in September 1997, and their marriage was dissolved on December 1, 2010, by a decree adopting the parties' dissolution stipulation. The parties agreed they would have joint legal custody and Katherine would have physical care of their four children: T.L.K., born in 1993; T.A.K., born in 1998; T.M.K., born in 1999; and T.K., born in 2008.

Prior to her freshman year of high school, T.A.K. expressed interest in going to a boarding school located near Chicago, Illinois. T.A.K. is an exceptional student and wanted to attend the boarding school to further her chances of getting into a top postsecondary school. Katherine paid all of the expenses for T.A.K.'s four years of high school at the boarding school. T.A.K. graduated from high school just prior to the modification hearing.

Damon filed the petition for modification on February 22, 2016, seeking physical care of the parties' two minor children—T.M.K. and T.K.—and a corresponding adjustment of the child-support payment. On March 11, 2016,

Katherine filed an answer and counterclaim requesting review and adjustment of the child-support payment, reimbursement for school expenses paid by Katherine on behalf of the minor children,[1] and copies of the children's medical insurance cards.

The modification hearing was held June 29, 2016, and the court entered the modified decree on July 20. The court denied Damon's request for modification of physical care, adjusted the child-support payment, ordered Damon to reimburse Katherine for T.A.K.'s high school expenses, and ordered Damon to pay $2000 of Katherine's attorney fees. Damon now appeals.

**II. Standard of Review.**

"Appeals regarding the dissolution of marriage are equitable proceedings. Therefore, our standard of review is de novo." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483-84 (Iowa 2012) (citation omitted). "We give weight to the trial court's findings of fact but they do not bind us." *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995). "Even though we engage in a de novo review, we will not disturb the trial court's conclusions unless there has been a failure to do equity." *Id.* "We review the district court's award of attorney fees for an abuse of discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).

**III. Analysis.**

On appeal, Damon does not challenge the district court's denial of his request to modify physical care. Rather, Damon contends the court erred in

---

[1] Specifically, Katherine requested Damon be required to pay two-thirds of T.A.K.'s postsecondary education expenses to account for Damon's failure to contribute to T.A.K.'s high school expenses.

ordering him to reimburse Katherine for one-half of T.A.K.'s high-school expenses, determining Damon's income for purposes of the child-support calculation, and requiring Damon to pay a portion of Katherine's attorney fees.

*(A) T.A.K.'s High School Expenses.* Damon asserts Katherine unilaterally enrolled T.A.K. in boarding school and, therefore, under the terms of the parties' stipulation adopted by the court, Damon should not be required to pay for one-half of the expenses. As to school fees and extra-curricular activities, the decree provides:

> The parties shall each pay one-half of the school fees, including tuition, registration, bus fees, book fees, athletic passes, instrument rental, and similar extra-curricular activities, including tuition and the cost of special equipment and travel, so long as each party agreed to the child's participation in the activity in advance. If a parent unilaterally involves the children in such activities, he/she shall bear the entire cost.

Damon argues he did not agree to send T.A.K. to the boarding school and, therefore, Katherine was required to pay the entire cost. When asked how he weighed in on the decision, Damon testified:

> Both of us were broke at the time. I got made out to be the father that didn't care because I wouldn't send my daughter to this fancy school, and the cost wasn't the issue. Yes, it was—it was the same as a private school, but the main thing is, she's not home. She is living away from her family.
> . . . .
> I told her from the beginning I was not on board with this fancy, spendy school that millionaires send their kids to. I said, she should be home with her family, and, I said, we are in no way financially sound for this.

The total cost for T.A.K.'s high school education was $20,070. Before high school, T.A.K. attended a private school, Remsen Saint Mary's, in Remsen, Iowa. Katherine testified that due to T.A.K.'s receipt of a scholarship, there was

less than one thousand dollars difference between the cost of the boarding school and Remsen Saint Mary's.

The district court found Damon agreed to pay one-half of the children's education costs and had not done so. Therefore, the court ordered Damon to pay Katherine $10,035 in monthly installments of $280.

We agree with the court's finding Damon was obligated to pay one-half of T.A.K.'s high school expenses. The intent of district court expressed in the decree was that the parties equally share the children's school expenses. *See In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012) ("[O]nce the court enters a decree adopting the stipulation, '[t]he decree, not the stipulation, determines what rights the parties have.' 'Therefore, in ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties.'" (citations omitted)).

Other than his testimony at the modification hearing, Damon offered no evidence he previously objected to T.A.K. attending boarding school. Even if T.A.K. would have continued attending Remsen Saint Mary's for high school, Damon's one-half share of the expenses would have been nearly equal to the boarding-school expenses. Damon cannot now raise his objection to T.A.K.'s schooling to avoid paying half of the expenses as required by the decree. The parties' stipulation, approved by the court, did not limit "school fees" to Remsen Saint Mary's. Moreover, the decree specifically provides, "If a parent unilaterally involves the children in such *activities*, he/she shall bear the entire cost." We interpret this language to encompass extra-curricular activities not the "school

fees" for a different school. The district court's order that Damon pay his equitable share of T.A.K.'s high school expenses was not improper.[2]

*(B) Child-Support Calculation.* Damon also asserts the district court improperly calculated the modified child-support payment.[3] Damon argues the calculation overestimates his future earnings.

The court explained its reasoning in calculating the modified child-support amount:

> Damon will be earning less now that he has gone to days, but to what degree is . . . difficult to determine. Working nights and earning a night pay differential plus overtime, in 2015 Damon earned $74,442. The court finds working days plus overtime, his projected earnings will be $65,000. . . . The court finds the child support for two children should be $1,000 per month and $672 per month when there is one child . . . .

Damon argues the amount of overtime pay he received in 2015 was unusual and it was unfair for the court to assume he would continue receiving overtime pay for purposes of determining his future earnings. However, at trial, Damon testified that although he worked a greater amount of overtime hours in 2015 due to special circumstances at his job, he continues to work overtime.

"Overtime wages are within the definition of gross income to be used in calculating net monthly income for child support purposes." *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005).

---

[2] Clearly the "school fees" issue was not a modification of the decree, and the modification standards of Iowa Code section 598.21(8) (2016) do not apply to this relief sought by Katherine. Rather, the relief sought was in the form of a declaratory judgment. *See In re Marriage of Youngblut*, No. 05-0807, 2006 WL 469786, at *2-3 (Iowa Ct. App. Mar. 1, 2006). Because both parties agree our review is de novo, we have applied that standard of review.

[3] Neither party disputes the district court's finding there is a substantial change in circumstances warranting modification of the child-support amount based on the fact that two of the parties' children are no longer minors. *See* Iowa Code § 598.21C(1).

Damon gave no indication what his future income may be or how much overtime he would receive in 2016, but he did acknowledge and agree with the gross income figures provided by Katherine. Damon did not submit his own updated financial affidavit at trial. Kathrine's financial affidavit identified Damon's gross monthly income to be $6203 per month. Moreover, Damon testified that his hourly wage was reduced by $1.25 per hour, an amount that would reduce his annual income only $2600 without consideration of overtime hours, yet the district court reduced his income over $9400.

Additionally, although Damon voluntarily reduced his income by switching to daytime hours just prior to trial, the court still allowed for a reduction in Damon's estimated income. *See In re Marriage of Malloy*, 687 N.W.2d 110, 115 (Iowa Ct. App. 2004) ("When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actually earnings when applying the child support guidelines."). However, we agree the reason for the shift change was to spend more time with the two younger children, ages sixteen and eight, and not to purposely reduce his income.

The court considered the relevant facts established by the evidence available to it and determined Damon's income to be $65,000, almost $10,000 less than Damon's 2015 income. The court took into account appropriate factors in calculating the child-support payment, including Damon's contribution in paying for the children's health insurance, that the parties now have only two minor children, and the reduction in Damon's pay. The court declined Damon's request to modify the physical care arrangement, leaving physical care with

Katherine and providing no reason to revise Damon's child-support obligation on that basis. The court reduced the child-support payment because Damon is now obligated to pay for support for only two of the parties' children. We are restricted to the facts in the record. Here, the court appropriately determined Damon's income and modified the child-support payment based upon the facts as established in the record. We therefore affirm the district court's child-support calculation.

*(C) Attorney Fees.* Damon also contends the district court abused its discretion in ordering Damon to pay a portion of Katherine's attorney fees.

Under Iowa Code section 598.36, "In a proceeding for the modification of an order or decree . . . the court may award fees to the prevailing party in an amount deemed reasonable by the court." "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Kimbro*, 826 N.W.2d 696, 704 (Iowa 2013) (citation omitted). "An award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion." *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997).

The district court awarded $2000 in attorney fees to Katherine because Damon was unsuccessful on the primary issue—Damon's request for modification of the physical care arrangement—and because Damon had not paid high school expenses as required by the decree. The district court noted it considered Damon's financial ability to pay in making all of the determinations in the order. Although Katherine is not entitled to attorney fees relative to her request for declaratory relief, the district court awarded Katherine about half of

the amount of attorney fees she requested. The amount awarded is reasonable and Katherine was the prevailing party. *See* Iowa Code § 598.36. We cannot say the district court's attorney-fee award constitutes an abuse of discretion.

**IV. Conclusion.**

We find the district court's order that Damon pay one-half of T.A.K.'s high school expenses was proper based upon the terms of the decree, the court equitably determined Damon's income for purposes of the child-support calculation, and the district court did not abuse its discretion in awarding attorney fees to Katherine. We therefore affirm.

**AFFIRMED.**