# IN THE COURT OF APPEALS OF IOWA

No. 20-0774
Filed July 21, 2021

**JED R. DENSON,**
        Plaintiff-Appellee,

**vs.**

**ALEXANDRIA P. CAPPS,**
        Defendant-Appellant.,

**and**

**CHILD SUPPORT RECOVERY UNIT,**
        Interested Party.
_____

        Appeal from the Iowa District Court for Des Moines County, Wyatt Peterson,

Judge.


        Alexandria Capps appeals from the modification of her custody decree.

**AFFIRMED.**


        Scott E. Schroeder of Clark & Schroeder, PLLC, Burlington, for appellant.

        Stephanie L. Kozlowski of Kozlowski Law Group, L.L.C., Burlington, for

appellee.


        Considered by Tabor, P.J., May, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**GAMBLE, Senior Judge.**

Alexandria Capps appeals from the modification of her custody decree with Jed Denson.  We affirm.

**I. Background Facts**

Capps and Denson are the never-married parents of S.C., who was born in December 2012.  Roughly eighteen months after S.C.'s birth, Capps and Denson ended their relationship.  At that time the parents had no formal custodial agreement.

In July 2015, the parents entered into a stipulated custodial decree, which provided for joint legal and joint physical care of S.C.  In April 2017, the parties modified the custodial decree by stipulation.  Under the modified decree, the parents continued the have joint legal and joint physical care of S.C. but changed their parenting schedule.

Denson married in 2018.  And his wife took on a step-parenting role to S.C., with S.C. spending three nights per week in her care while Denson worked.

In August of 2018, Denson filed this action to modify the physical care provision of the parents' decree.  The district court held a two-day hearing on the matter in August 2019.  The court issued a written ruling in April 2020, which found material and substantial changes in circumstance since entry of the April 2017 modified decree to warrant a change in physical care.  The court gave physical care to Denson and visitation to Capps.

Capps appeals.  We will discuss additional facts as necessary.

**II. Scope and Standard of Review**

Iowa Code chapter 600B (2018) governs this proceeding because the parents never married. However, "[w]e apply the same legal framework to custody and visitation matters involving unmarried parents as we do to those issues arising between parents who had been married." *Spaulding v. Glenn*, No. 20-0642, 2021 WL 811126, at *3 (Iowa Ct. App. Mar. 3, 2021) (citing Iowa Code § 600B.40).

Custody proceedings between unmarried parties are in equity, and we review equitable proceedings de novo. *See* Iowa R. App. P. 6.907; *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). We review the entire record and decide the factual and legal issues preserved and presented for review. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). However, we defer to the district court's factual findings for reasons both institutional and pragmatic. *See Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). So we give weight to the district court's factual findings and will affirm the district court unless it "failed to do substantial equity." *Id.*

Of course, our primary concern on our review is the best interest of the child. Iowa R. App. P. 6.904(3)(o); *Phillips*, 541 N.W.2d at 847. "Applying the best-interest standard allows us 'the flexibility necessary to consider unique custody issues on a case-by-case basis.'" *Spaulding*, 2021 WL 811126, at *3 (quoting *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015)).

**III. Discussion**

"Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the [last modification] was entered,

which was more or less permanent, and relates to the welfare of the child." *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002); *see also In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995). Here, it is not clear whether Capps challenges the district court's determination that there was a material and substantial change in circumstances since the last modification. However, on our review of the record, we conclude Capps conceded as much through her testimony. When asked why she hadn't "sought a change with the court," Capps responded, "[Denson] beat me to it." So we assume she agreed there was a material and substantial change in circumstances since the last modification to warrant a modification, which would serve as the basis for her would-be petition to modify physical care.

Even if Capps does not agree there was a substantial and material change in circumstances since the last modification, we conclude such changes occurred. Those changes include Denson marrying and the parents' disagreement about Denson's wife's role in S.C.'s life; Capps moving in with her parents and younger siblings; and the general deterioration of the parents' co-parenting relationship. *See Melchiori*, 644 N.W.2d at 368 ("The shared custody provisions agreed to by these parties and incorporated into the decree have not evolved as envisioned by either of the parties or the court. Both parents appear to agree joint physical care is not working. Discord between parents that has a disruptive effect on children's lives has been held to be a substantial change of circumstance that warrants a modification of the decree to designate a primary physical caregiver if it appears that the children, by having a primary physical caregiver, will have superior care.").

Since we have found a material and substantial change in circumstances, we must consider whether either parent can provide superior care. Because the parents had joint physical care of S.C. under the modified decree, we begin by acknowledging that both parents are suitable caregivers and begin on equal footing. *Id.* at 369. And because Denson seeks to move the child out of joint physical care and into his physical care, he must prove a superior "ability to minister more effectively to [S.C.]'s well-being." *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Capps highlights placing physical care with Denson would reduce S.C.'s time with Capps's two other children. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986) (noting the court's "interest in keeping children of broken homes together" and recognizing that general principle also applies to half-siblings). But we are cognizant that S.C. also has a half-sibling on Denson's side. So she is necessarily missing out on sibling time no matter which home she is in. So this factor is not determinative.

The parents run their homes in diametrically opposing fashions. Denson's home relies on a more rigid structure while Capps's home runs in a more organic and fluid manner. Neither approach is inherently superior to the other. However, other differences favor Denson. Denson presented evidence that S.C. is ill-kept at times while in Capps's care.[1] Moreover, Capps has moved several times in the

---

[1] Denson testified to finding a panty liner in S.C.'s underwear after she was in Capps's care. He claimed S.C. told him her underwear was dirty so Capps put a panty liner in the underwear to avoid infection. The district court paid particular attention to this detail in its order stating, "The court can think of no legitimate reason that a seven-year-old girl should have a panty liner in her underwear."

time between modification actions. This inherently adds a certain level of instability to S.C.'s life. Currently, Capps lives in her parents' home with S.C., her two younger children, her parents, and four siblings.[2] And Capps testified she is planning on moving again soon. So we do not believe her somewhat nomadic lifestyle is at an end.[3] Conversely, Denson has stayed in the same home, which he shares with S.C., his wife, and second child.

But most significant to us in this case is the parties' ability to get S.C. to school consistently. During her kindergarten year, S.C. missed a significant number of school days.[4] S.C. missed only two days of school while in Denson's care. So the remaining absences occurred while in Capps's care. Consistency is crucial for young children. That need for consistency extends to a child's education. S.C. must consistently be in school to reap its benefits, which serve as the building blocks for her future. Denson has demonstrated an ability and willingness to ensure S.C. regularly attends school, which contrasts with the many absences S.C. incurred under Capps's care.

---

However, we believe there could be any number of plausible explanations and do not consider this fact in favor or against either parent.

[2] Ten people live in Capps's parents' five-bedroom house. Capps and her youngest child sleep in the living room while S.C. and Capps's middle child share a bed in a converted room.

[3] The mother testified she is waiting to be admitted to subsidized housing. But she previously lived there and moved out because she did not like the terms of living there, which include monthly inspections, prohibitions against people not listed on the lease living there, and increasing rent when a tenant's income increases. So even if Capps secures a spot in the subsidized housing, we think it is likely she will not stay for long.

[4] During the school year, records show S.C. missed the first of four daily periods a total of thirty-four times (twelve unexcused), the second of four daily periods twenty-eight times (six unexcused), the third of four daily periods twenty-six times (three unexcused), and the fourth of four daily periods twenty-five times (one unexcused).

In short, Denson provides S.C. with stability and consistency that Capps cannot match. So we conclude Denson has met his burden to demonstrate he can minister more effectively to S.C.'s wellbeing.[5]

Capps requests appellate attorney fees. However, because she is not the prevailing party on appeal, we do not have authority to award her attorney fees. *See* Iowa Code § 600B.26 ("In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees.").

**AFFIRMED.**

---

[5] The district court gave considerable weight to Capps's inability to name the fathers of her other children and her use of an online chat application for compensation. However, we note there is no evidence of any misconduct occurring in the presence of S.C. or that Capp's relationships or use of the chat application affected her ability to care for the child. Accordingly, we give this little weight in our custody determination. *See In re Vanous*, No. 99-900, 2000 WL 504597, at *1 (Iowa Ct. App. Apr. 28, 2000) ("Moral misconduct is also a factor to be accorded weight in a child custody determination; however, it has been weighed most heavily only in those cases where the misconduct occurred in the presence of the child."); *see also Diers v. Coffman*, No. 15-1282, 2016 WL 1697069, at *6 (Iowa Ct. App. Apr. 27, 2016) (recognizing "moral misconduct" can be a factor when determining custody but our "determinations are not made to reward one parent or punish the other").