In re the MARRIAGE OF Rick L. CLIFFORD and Kathy Clifford n/k/a Kathy Hagen.

Upon the Petition of Rick L. Clifford, Petitioner–Appellee,

And Concerning Kathy Clifford n/k/a Kathy Hagen, Respondent–Appellant.

No. 93–0485.

Court of Appeals of Iowa.

Feb. 25, 1994.

David W. Sheetz, Des Moines, for appellant.

Dennis J. Kirkwood, Des Moines, for appellee.

Heard by HAYDEN, P.J., HABHAB, J., and PERKINS, S.J.*

HABHAB, Judge.

Former wife, Kathy Clifford, n/k/a Kathy Hagen, appeals from a district court order modifying the custody provisions of the parties' 1991 dissolution decree. We affirm.

Kathy and Rick were divorced on November 1, 1991. Kathy was awarded primary care of their two children: Rick J., born June 5, 1979, and Tiffany, born December 11, 1982. The dissolution decree awarded Rick "reasonable visitation." In April 1992, Kathy moved from Des Moines to Cedar Rapids. She informed Rick of the move, but did not provide him with her home address or phone number. During this time Rick was allowed only sporadic visitation with his children, which Rick had to negotiate using his son as an intermediary.

On June 1, 1992, Rick filed an application to modify the dissolution decree by providing specific visitation, or for a change in physical custody. He also asked that the court order Kathy to disclose her address and phone number, make the children available for telephone communication, turn over all bonds issued in the names of the children, and to refrain from using vulgar and profane language in communicating with Rick. Trial was set for December 1, 1992. Kathy's counsel withdrew on November 9, 1992.

On December 1, Kathy did not appear for the scheduled trial. The district court entered a temporary order specifying visitation

rights, ordering a custody investigation, and rescheduling the final hearing for March 2, 1993. On February 26, 1993, Kathy moved to continue the final hearing. After a hearing, the district court denied the motion.

At trial, the custody investigator, William Pearce, testified that Rick J. seemed confused, sullen, and worried, and had been placed in an inappropriate intermediary role. He testified that Tiffany is passive and somewhat immature. He expressed his concerns about Kathy's seeming disregard for Rick's visitation rights and about her disposal of the children's bonds, purchased by Rick's grandmother, which were intended for the children's college education. He recommended that the children be placed in Rick's primary care because Rick offered a more stable household and a better understanding of the children's needs.

Rick testified about the difficulties he has had trying to visit the children since Kathy's move to Cedar Rapids and about the general lack of communication about the children's school activities. Rick expressed his concerns that even more difficulties would occur when Kathy moved to Texas. Both Rick and Shelly, his new wife, testified that the children and Shelly get along well.

Kathy admitted she cashed $10,000 in bonds that were in the children's names. Kathy spent $1400.00 of the proceeds on video games and equipment. Another $5000.00 was spent on a down payment on their mobile home, plus central air and curtains. The rest was spent on furniture, and other miscellaneous items, because "[t]hose children need a present before they have a future."

Both Kathy and her boyfriend, Gordon Goerdt, also testified about their plans to move to Texas, where he intended to buy a home for them and their four children. Kathy stated she did not disclose her phone number or address when she moved because Rick harassed her on the telephone. She testified that she encouraged the children to call and to visit their father.

---

* Senior judge from the 5th Judicial District serving on this court by order of the Iowa Supreme Court.

The district court placed the children in Rick's physical care, awarded Kathy "reasonable rights of visitation," and ordered Kathy to pay child support in the amount of $404 per month. Kathy appeals.

## I. *CHANGE IN CUSTODY OF MINOR CHILDREN.*

Kathy contends the district court erred in changing custody of Rick J. and Tiffany from herself to Rick. She contends that she did not interfere with Rick's visitation and that the custody report was based on an incomplete investigation.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

"To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) (citing *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980)). The party seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being. *Id.*

This burden stems from the principle that once custody of a child has been fixed, it should be disturbed only for the most cogent reasons. *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980).

From our de novo review, we agree with the district court Rick has shown he can best minister to the children's needs. We find Rick can provide a more stable home than Kathy. Despite her testimony to the contrary, we believe Kathy has not supported the children's relationship with their father or assured the children maximum continuing physical and emotional contact with their father. *See* Iowa Code § 598.41 (1991). She refused to give Rick her address or phone number in Cedar Rapids until three or four months after she moved. She used Rick J. as an intermediary to negotiate visitation, and refused Rick's request to speak directly to her. According to the custody investigator's report, regarding her move to Texas Kathy stated, "I guess I'm free to go where ever I want and the kids are mine, so they go with me." Concerning the distance and the children's visitation with their father, she felt, "that's not my problem."

We also note the custody investigator's conclusions:

The father offers a more stable household with better understanding of children's needs than the mother.

It is particularly of concern that the mother disposed of the children's college money without consultation, has had Rick play the inappropriate adult role of mediator by telephone, seems to view the children as hers to do with as she wants, and has little regard for their need to have contact with the father. The mother's disposing of the college money seemed to show irresponsibility toward the children's future needs. It also seems clear that she has been talking negatively to the children about their father, and using guilt as a means to get them to be [on her side] in the "war" with the father.

The father and Shelly offer a complete and mature home. It is physically superior, both as a facility and in the attention to the home reflected in its condition. Young Rick will have some trouble adjusting if placed with his father and Shelly, but not much. It is my suspicion that he would secretly welcome this.

We are concerned about Rick J.'s testimony describing two physical altercations with his father and one with his mother. In contrast, the custody investigator testified he pursued to some extent with each of the children whether anyone was hitting them and if they were being physically abused and they answered no. The investigator also stated, because Rick J. is so confused about whom he should be loyal to, that he would

not place much weight on what Rick J. might say when he testified.

■ At trial Rick J. expressed a preference to live with his mother. A child's stated preference is a factor to be considered by the court in determining custody arrangements, however, it is not controlling. *In re Marriage of Udelhofen,* 444 N.W.2d 473, 476 (Iowa 1989); *In re Marriage of Bugg,* 492 N.W.2d 452, 454 (Iowa App.1992); *In re Marriage of Erickson,* 491 N.W.2d 799, 803 (Iowa App.1992); *see also* Iowa Code § 598.41(3)(f).

Although Rick J. expressed, at trial, a preference to live with his mother, he also admitted previously he told his father he would prefer to live with him. Also, at one point Rick J. indicated to the custody investigator, his preference was to live with the opposite parent of his sister.

After reviewing all the evidence, we agree with the district court that there was a substantial and material change in circumstances to support a modification of the custody provision. We find that even though Rick J.'s current preference is to live with his mother, the best interest of both children would best be served by giving Rick primary care of the two children. We affirm the district court on this issue.

## II. *DISTRICT COURT'S REFUSAL TO GRANT A CONTINUANCE.*

■ Kathy also argues her motion for a continuance filed February 26, 1993, should have been granted. She alleges a continuance was necessary because she was unable to obtain counsel to represent her until February 17, 1993. She also alleges the late filing of the custody investigator's report did not allow her the opportunity to retain expert testimony to rebut the custody investigator's findings.

Kathy was personally served with the Original Notice on June 29, 1992. She obtained counsel and filed an Answer on July 17, 1992. On September 23, 1992, a trial date was set for December 1, 1992. On October 30, 1992, Craig Shannon, counsel for Kathy, filed an application to withdraw alleging Kathy had failed to respond to his request for information and that he had not been paid for services. Mr. Shannon notified Kathy of the hearing on his motion to withdraw. On November 9, 1992, Mr. Shannon was allowed to withdraw as Kathy's attorney. Kathy states she did not respond to Mr. Shannon's request for information because she was trying to get counsel closer to Cedar Rapids. Kathy did not appear for the trial on December 1, 1992. The district court ordered a custody investigation and set a final trial date for March 2, 1993. Kathy admits that she received this order, although she is not sure if she read it.

We find the district court was within its discretion in overruling Kathy's motion for a continuance. We affirm the district court on this issue.

Kathy also requests attorney fees for this appeal. We determine each party should pay his or her own attorney fees. Costs of this appeal are assessed to Kathy.

**AFFIRMED.**