# IN THE COURT OF APPEALS OF IOWA

No. 15-1010
Filed April 6, 2016

**CHARLES FISHER,**
　　　　Plaintiff-Appellee,

**vs.**

**JANICE SUE PARKS,**
　　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Floyd County, DeDra L. Schroeder,

Judge.

A mother appeals a modification order transferring physical care of her

children to the father. **AFFIRMED.**

William P. Baresel of Prichard Law Office, P.C., Charles City, for

appellant.

Laurie J. Pederson of Pederson Law Office, Rockford, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals a modification order transferring physical care of her children to the father following the mother's out-of-state move.

*I.    Background Facts and Proceedings*

Janice Parks and Charles Fisher are the parents of two children who were seven and four years old at the time of the modification hearing.  Parks had physical care of the children pursuant to a consent order, subject to liberal visitation with Fisher.  The order provided, "If either party is going to move, there will be notice of no less than thirty days provided to the other parent."

Several months after the consent order was filed, Fisher learned Parks planned to move to Georgia.  He immediately filed a petition to modify custody alleging Parks "intend[ed] to leave the State of Iowa on the present date."  He simultaneously filed an application for an emergency temporary restraining order, alleging he only received notice of the move twenty-four hours earlier.

The district court denied the application for a restraining order on the ground Fisher failed to establish irreparable injury.  However, the court reminded Parks "the terms and provisions of the Custody Order regarding visitation remain in effect."  The court further stated Parks' efforts "to support the relationship between [Fisher] and the children" would be "carefully consider[ed]" at the modification hearing.

Parks settled in Georgia with the children and her new boyfriend.   Fisher had no personal contact with the children for nine months.

At the modification hearing, the parents provided conflicting testimony on whether Parks' notification of her intent to move comported with the provision in

the consent decree. Much of their remaining testimony also was diametrically opposed.

The district court essentially adopted Fisher's version of events where there were contradictions. The court granted the modification petition and transferred physical care of the children to Fisher.

On appeal, Parks contends the district court (1) failed to cite the correct legal standard for modification of physical care, (2) inappropriately considered her move to Georgia as "itself a justification for a change of custody," and (3) found she undermined Fisher's relationship with the children even though "[t]here was no evidence in the record to show this fact."

## II.  Statement of Law

To modify a dissolution decree a parent must establish a material and substantial change of circumstances. *In re Marriage of Harris*, ___ N.W.2d ___, ___ (Iowa 2016).  A parent's move may constitute a material and substantial change of circumstances but, as Parks points out, the move alone may not necessarily justify a modification of the physical care arrangement. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 34 (Iowa 2015).  The parent seeking a modification also must establish "an ability to minister more effectively to the children's well-being." *In re Marriage of Clifford*, 515 N.W.2d 559, 561 (Iowa Ct. App. 1994).  The parent may meet this requirement by showing the custodial parent failed to support the relationship with the non-custodial parent. *Id.*

## III.  Analysis

The district court found that Parks' move to Georgia amounted to a substantial change of circumstances. Parks does not dispute this finding.

The district court next cited the law permitting a modification for failure to support a parental relationship. The court specifically stated, "Custody can be changed from the custodial parent if it substantially and unreasonably interferes with the rights of the noncustodial parent to visit and contact the children."

Applying this law, the court determined Parks' "actions in stripping [Fisher] of his visitation time" both before and after her move to Georgia left the court "with grave doubts that [Parks] has promoted the children's relationships with their father." The court cited Parks' denial of "access to the children over Christmas" and her failure to afford Fisher visitation when she came to Iowa for the modification hearing. The court also found it "unfortunate that [Parks] did not make any real effort to keep [Fisher] involved in the children's lives when she moved to Georgia." The court noted that "it took a Court admonish[ment]" before Parks opened up telephone communication with him. Finally, the court found Parks "failed to keep [Fisher] apprised of even the most basic information such as: where the children attend school, who is providing for their care, the current name of the children's school, [or] the children's current medical situation."

On our de novo review of the record, we find ample support for these findings. Fisher testified he had no idea who cared for his children when Parks was at work, where the children were on the date of the modification hearing, or what environment they lived in. *See Hoffman*, 867 N.W.2d at 32-33 (noting the noncustodial parent had a right to be consulted about decision to change residences). Parks testified she "typically avoid[ed] people" she could not get along with and, for this reason, she had "limited communication" with Fisher. Indeed, she testified she had only "[o]ne" conversation with him after she moved

to Georgia. That conversation concerned his right to visit the children over Christmas. Parks conceded she initially agreed to transport the children to Iowa for the visit but stated she later refused to facilitate the visit due to the court proceedings and Fisher's unwillingness to "negotiate" the terms of the visit. When asked about Fisher's extended lack of personal contact with the children, she responded, "I think that him having all of his visitation at one time would be better." At the same time, she acknowledged she "would not be happy" with a similar arrangement if the shoe were on the other foot.

Parks' refusal to inform Fisher about key facets of a joint custodial relationship, her refusal to keep him apprised of the children's well-being, and her refusal to facilitate visits undermined Fisher's relationship with the children. *Cf. id.* at 33 (finding no credible evidence that move by custodial parent was intended "to defeat [non-custodial parent's] visitation rights or undermine his relationship with the children"). Based on her conduct, the district court acted equitably in transferring physical care of the children to Fisher.

Costs of this matter are assessed to Parks.

**AFFIRMED.**