# IN THE COURT OF APPEALS OF IOWA

No. 18-1702
Filed December 18, 2019

IN RE THE MARRIAGE OF JAMIE L. CHRISTY
AND MATTHEW CHRISTY

Upon the Petition of
JAMIE L. CHRISTY,
        Petitioner-Appellant,

And Concerning
MATTHEW CHRISTY,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Warren County, Bradley McCall,

Judge.


        A mother appeals the order modifying the physical-care provisions of a

dissolution decree and finding her in contempt. **MODIFICATION REVERSED;**

**WRIT ANNULLED IN PART AND SUSTAINED IN PART.**


        Cami Eslick of Eslick Law (until withdrawal), Indianola, for appellant.

        Jamie Leigh Plambeck, f.k.a. Jamie Leigh Christy, Indianola, self

represented.

        Ryan J. Ellis, Nicholas A. Carda, and Tracy A. Eaton of Ellis Law Offices,

P.C., Indianola, for appellee.


        Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Jamie Plambeck[1] appeals the district court order modifying the physical-care award in the decree dissolving her marriage to Matthew Christy. She also contends the district court wrongly found her in contempt for denying Matthew's spring break visitation with their daughter P.L.C., for refusing to allow Matthew telephone contact with P.L.C. for two weeks, and for failing to communicate regarding the child's preschool enrollment. After reviewing the record, we find Matthew failed to prove a substantial change in circumstances since the court entered the decree in June 2015. Therefore, we reverse the modification of physical care. But on two of the three contempt counts, we agree with the district court's finding of proof beyond a reasonable doubt that Jamie violated the terms of the original decree. Thus, we leave two of the three contempt findings in place.

## I.   Facts and Prior Proceedings

Jamie and Matthew married in December 2011. In 2012, Jamie gave birth to their daughter, P.L.C. In May 2014, Jamie filed for divorce. The district court entered a decree dissolving their marriage in June 2015. That decree awarded Jamie physical care of P.L.C. with visitation to Matthew. At that time, Jamie lived with P.L.C. in Indianola. Jamie worked in the health care field as a certified nurse's assistant. Matthew served in the Marines for fifteen years and was a recruiter in Iowa. At the time of the decree he "spent most of [his] time in California." He eventually retired from the Marines and moved to Florida. After leaving the

---

[1] The divorce decree changed Jamie's legal surname from Christy to Plambeck.

Marines, Matthew pursued a degree in business management at the University of South Florida.

The divorce decree provided Matthew with these visitation times: (1) one week during P.L.C.'s spring break from school or other relevant time and (2) two twenty-one day periods during the summer months or P.L.C.'s "summer break" from school.  Between those three-week periods, Jamie was allowed a minimum of one three-day visit.  The decree also ordered Matthew to pay all transportation costs associated with exercising his visitation.  But both Matthew and Jamie were to take measures to ease the costs of traveling.  Each party was to provide the other with notice of the exchanges thirty days in advance.  Under the decree, if a party did not provide proper notice, he or she, would be "completely responsible for the exchange."

The decree also provided the parties with "the rights to have legal access to information pertaining to P.L.C. including, but not limited to medical, educational and law enforcements records."  In addition, both parties had equal right to participate in decisions affecting P.L.C.'s legal status, medical care, education, extracurricular activities, and religious training.

In August 2016, Jamie moved from Indianola to Nebraska with her paramour Josh.  Then in January 2017, Jamie moved from Nebraska to Laurens, Iowa, taking P.L.C. out of preschool for about three months.  Jamie re-enrolled P.L.C. in daycare in March 2017.

Then in April 2017, the parties sparred over Matthew's spring break visitation.  Matthew flew from Florida to Iowa, but did not end up having visitation with P.L.C. because Jamie did not agree to the timing of Matthew's visit.  Jamie

testified she was tired of accommodating Matthew's schedule. She recalled a time in 2016 when Matthew asked her to drive five and half hours from O'Neill, Nebraska, to Des Moines to drop off P.L.C. for her visit. Jamie objected, and Matthew eventually switched his flight to the Omaha airport. But Jamie still drove three and one-half hours to meet with Matthew. Jamie pointed out the decree specified visitation would be during P.L.C's spring break. She also believed the decree placed responsibility on Matthew to bear the cost of transportation for P.L.C during her visits.

One month after the spring break conflict, Jamie emailed Matthew that there was "no need" to call her phone to talk to P.L.C. for two weeks because "she will not be with me while I have the new baby." P.L.C. was staying with her maternal grandparents while Jamie gave birth to her half sibling. Matthew was unsuccessful in contacting P.L.C. through her grandparents.

Motivated by those incidents, in May 2017, Matthew petitioned for modification of the decree, as well as applying for a rule to show cause why Jamie should not be held in contempt. In late 2017 and again in early 2018, Matthew unsuccessfully sought temporary emergency custody of P.L.C.

In July 2018, the district court held a combined hearing on Matthew's modification action and his application for rule to show cause. In August 2018, the district court entered a modified decree awarding Matthew physical care of P.L.C. and finding Jamie in contempt of court on three counts. In response to Matthew's

motion under Iowa Rule of Civil Procedure 1.904(2), the district court entered a more detailed ruling in September 2018. Jamie now appeals.[2]

## II.     Scope and Standards of Review

We review rulings on motions to modify dissolution decrees de novo. Iowa R. App. P. 6.907; *In re Marriage of Beecher*, 582 N.W.2d 510, 512 (Iowa 1998). "We examine the entire record and adjudicate anew rights on the issues properly presented." *Beecher*, 582 N.W.2d at 512–13. We are not bound by the district court's findings of fact, though we accord them weight, especially on witness credibility.[3] *Id.* at 513.

Our primary concern is P.L.C.'s best interests. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). When determining physical care, we are guided by the factors established in Iowa Code section 598.41(3) (2017) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). But because each family presents its own strengths and challenges, we base our determination on the circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

Our review on certiorari is limited to deciding whether the district court acted illegally. *See Zimmermann v. Iowa Dist. Ct.,* 480 N.W.2d 70, 74 (Iowa 1992). That review is not de novo but at law. *Id.* When we review a contempt finding by certiorari, we determine whether substantial evidence supports the district court's

---

[2] Although her challenge to the contempt findings should be through a petition for writ of certiorari rather than direct appeal, we will treat this action as if it were filed correctly. *See* Iowa R. App. P. 6.108.

[3] We acknowledge the district court found Matthew was "candid and honest throughout his testimony" and conversely, was "unable to say that Jamie was candid and honest throughout her testimony."

judgment. *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995). The district court's conclusions of law do not bind us. *Id.*

## III. Analysis

### A. Modification of Physical Care

As the party seeking to change the custodial arrangement, Matthew must show by a preponderance of the evidence that modification is appropriate. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We apply a two-pronged test. First, Matthew must show conditions since entry of the decree have materially and substantially changed such that it is fitting to request the modification, the changes were not contemplated by the court when entering the decree, are more or less permanent, and relate to P.L.C.'s welfare. *See id.* And second, Matthew must show his ability to offer superior care. *See In re Marriage of Mayfield*, 577 N.W.2d 872, 873 (Iowa Ct. App. 1998).

"The burden is necessarily a heavy one undergirding the fundamental policy that 'once custody of children has been fixed it should be disturbed only for the most cogent reasons.'" *Hoffman*, 867 N.W.2d at 32 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 160 (Iowa 1983)).

In approving Matthew's modification, the district court concluded "a dramatic preponderance of the evidence" established a substantial change in circumstances related to the custodial provisions of the decree. To illustrate the change, the court elaborated: "The evidence establishes that Jamie is not a suitable primary custodian for P.L.C. She is unable to communicate effectively with Matthew to work together for the best interests of P.L.C. Jamie is totally unwilling to support Matthew's relationship with P.L.C."

That elaboration puts the cart before the horse. The court addressed Matthew's complaints about Jamie's parenting without identifying a substantial change in circumstances not contemplated in 2015 when the court entered the decree.

On appeal, Matthew contends the physical-care parent's interference with the other parent's right to visitation and contact with the child can rise to the level of a substantial and material change in circumstances. In support of his contention, he cites *In re Marriage of Clifford,* 515 N.W.2d 559 (Iowa Ct. App. 1994), and *In re Marriage of Wedemeyer,* 475 N.W.2d 657 (Iowa Ct. App. 1991).

We agree with the general proposition that proof of a custodial parent's recalcitrance may qualify as a material change of circumstances justifying a change in custody. *See, e.g.*, *Wedemeyer*, 475 N.W.2d at 659 (finding "[s]ince the dissolution, [mother's] behavior has escalated to the point of an obsession" and highlighting "her flagrant and continuing destructive conduct that interfered with children's association" with their father); *Clifford*, 515 N.W.2d at 561 (describing mother's interference with the father's visitation rights by quoting her after move to Texas: "I guess I'm free to go where ever I want and the kids are mine, so they go with me").

By contrast, the interference attributed to Jamie was too isolated and insignificant to mark a substantial change in circumstances meriting an upheaval in P.L.C.'s custody arrangement. Only once did Jamie arguably interfere with Matthew's visitation—spring break 2017. From our review of that failed visitation, we find both parents bear some responsibility for the miscommunication. Admittedly, Jamie's restriction on Matthew's phone calls in the early summer of

2017 was a misstep on her part. But it was not the kind of escalating destructive conduct noted in *Clifford* and *Wedemeyer*. The same is true for Jamie's lack of communication concerning P.L.C.'s preschool enrollment. While she should have been more forthcoming, the limited information provided Matthew was not aimed at undermining his relationship with P.L.C.

The crux of the district court ruling is that Jamie was engaging in less than desirable exchanges with Matthew. We agree with the district court that Jamie's use of coarse language toward Matthew in P.L.C.'s presence was highly inappropriate. But both parties have expressed disagreement toward the other. The fact that these parents sometimes disagree does not, in itself, rise to the level of a substantial change in circumstances. After all, their contentious relationship is "merely a continuation of what came before." *In re Marriage of Morrison*, No. 16-0866, 2017 WL 936152, at *3 (Iowa Ct. App. Mar. 8, 2017). We see no change in circumstances since entry of the decree. *See Albertus v. Albertus*, 160 N.W. 830, 831 (Iowa 1917) ("It would be a sufficient change of circumstances within the reasoning of those cases if this alleged animosity or other unfitness were not in existence when the original decree was entered.").

And while the parents' relationship remains contentious, we cannot say their hostility rises to the level requiring judicial intervention. *See Schmidt v. Quinn*, No. 18-0056, 2018 WL 4361059, at *2 (Iowa Ct. App. Sept. 12, 2018). Our record shows the parents do engage in civil communication and cooperation concerning P.L.C.'s welfare and activities. *Contrast In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (findings parties "unable to communicate civilly in person" and "their animosity toward each other [was] not lost on the children"). For example,

Jamie and Matthew effectively communicated to facilitate P.L.C.'s summer and Christmas visitations. Matthew also testified about a positive exchange he had with Jamie while P.L.C. was visiting him.[4] Matthew further testified they did not have problems when Jamie was living in Indianola and Jamie would bring [P.L.C.] to the airport in Des Moines.

The record does not support the district court's finding that Jamie is permanently unwilling to support Matthew's relationship with P.L.C. To the contrary, Jamie testified she now recognizes she has let her frustration with Matthew get the better of her and is working to improve her communication skills. Neither does the record show that Jamie is driving a wedge between P.L.C. and Matthew. The witnesses agreed P.L.C. has a close and loving relationship with both parents. The remedy to the communications problem between these parents is not uprooting P.L.C. from the physical-care relationship that she has enjoyed for the past six years and separating her from her younger sibling.

We do not find that a substantial change in circumstances has occurred since entry of the dissolution decree to support removing physical custody of P.L.C. from Jamie to Matthew. P.L.C.'s best interest will be served by the physical-care provisions of the original decree. That arrangement also will allow P.L.C. more continuous contact with her younger half-sister. *See Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511, 517 (Iowa 1976) (recognizing siblings should not be separated without compelling reasons). Because we do not find a substantial

---

[4] Matthew recalled: "We went to the Bibbidi Bobbidi Boutique where she got a full makeover into a princess. And I sent pictures and video to Jamie, and Jamie had thanked me for taking her and was telling me how long [P.L.C.] is going to be talking about this."

change in circumstances has occurred since the June 2015 decree we will not address the second prong that Matthew needs to show superior care.

## B.    Contempt Findings

Jamie also argues the district court should not have found her in contempt. To find a person guilty of contempt, a court must find beyond a reasonable doubt that the person willfully violated a court order or decree. *Jacobo*, 526 N.W.2d at 866 (citing Iowa Code § 598.23).   Here, Matthew had the burden to show the decree imposed a duty on Jamie and she failed to perform that duty. *See id.* If Matthew succeeds, the burden then shifts to Jamie to produce evidence that suggests she did not willfully violate the decree. *See id.* But the burden of persuasion remains on Matthew to prove beyond a reasonable doubt that Jamie willfully acted in violation of the decree. *Id.* We will address each of the three counts separately.

### 1.    Matthew's Spring Break Visitation

In 2017, Jamie was living in Laurens[5] which was about an hour and one-half from the airport in Sioux Falls, South Dakota.  Jamie told Matthew that P.L.C would be on spring break from April 14 through April 17 (Friday to Monday), so that he could arrange his flights around that time.  Matthew initially wanted to visit P.L.C. when his spring break at the University of South Florida started and not when P.L.C. had spring break from her preschool.  Jamie made it clear the decree said he should visit during P.L.C.'s spring break.  Matthew eventually agreed and asked Jamie to bring P.L.C. to the Des Moines airport at 6:30 p.m. on April 13.  He

---

[5] Laurens is located in Pocahontas County, Iowa.

also wanted to have Jamie pick up P.L.C. on the following Sunday morning. Jamie explained to transport P.L.C. to Des Moines by 6:30 p.m. she would have had to take P.L.C. from school at 2:30 p.m. That timing also required her to leave work early. Jamie did not believe the divorce decree required her to make such arrangements. She refused to do so and informed Matthew about her decision.

On Thursday, April 13, Matthew landed in Des Moines. Matthew texted Jamie expecting her to be at the airport despite not having any previous agreement. Matthew then rented a car and drove more than two hours to the Pocahontas County Sheriff's Department to have a deputy accompany him to Jamie's residence. Matthew reached Jamie's residence at 10:30 p.m. Given the late hour, Jamie declined to wake up six-year-old P.L.C. for the visitation.

After that, Matthew did not try to see P.L.C the next morning. Neither did Matthew ask to see P.L.C any time that weekend. Matthew explained he took Jamie's statement: "It's not going to happen" as an assertion he would not be allowed to visit P.L.C. during his stay in Iowa. By contrast, Jamie testified that she never told Matthew he could not start the visitation on April 14.

We find a discrepancy in the parents' understanding of the divorce decree regarding P.LC.'s transportation and that spring break. The text messages and emails show Matthew did ask Jamie several times to accommodate his schedule before the spring break visitation in dispute. Matthew did ask Jamie to travel to the Des Moines airport to drop off P.L.C. Jamie did not believe that the decree required her to bear the costs of transportation and time to accommodate Matthew's visit.

Once in Iowa, Matthew did not attempt to see P.L.C. on Friday or Saturday. The divorce decree is not sufficiently detailed to resolve the impasse encountered by Matthew and Jamie. *See id.* at 866 (noting "indefiniteness or uncertainty of the order at issue" is a defense available to a contemnor). Because both parties could have done more to make that visit possible, Jamie should not bear the sole responsibility for the failed visit and be found in contempt. We do not find Jamie willfully violated the decree. Therefore, we reverse the district's court finding that Jamie was in contempt for denying Matthew his 2017 spring break visitation. Jamie shall not be responsible for the $787.43 in travel costs that Matthew incurred in that disputed visitation with P.L.C.

**2.      Refusing Matthew's Communications with P.L.C.**

The decree directed the parents to "allow the other party to freely communicate with the child while in their care." That communication included a reasonable amount of phone calls and video messaging. The decree specifically stated: "Neither party shall deny the other the ability to communicate with the minor child." We agree with the district court that Jamie willfully violated this clear directive in the decree by refusing to allow Matthew telephonic or other communication with P.L.C during the two weeks when P.L.C. was staying with Jamie's parents in May 2017. We affirm the contempt finding on that count.

**3.      Failing to Give Matthew Notice of Preschool Enrollment**

The decree also required both parents to be involved in decisions about P.L.C's schooling and required Jamie to provide Matthew notice and an opportunity to discuss matters of educational interest. We agree with the district court that Jamie willfully violated those provisions by failing to inform Matthew

about P.L.C.'s preschool status in the fall of 2017. Jamie did not promptly advise Matthew that she took P.L.C. out of school in Estherville at the end of October 2017. Jamie also failed to communicate with Matthew regarding P.L.C.'s preschool status from January through March 2017. We affirm the contempt finding on that count.

## IV. Conclusion

To recap, because we find Matthew did not prove a substantial and material change in circumstances, we reverse the modification ruling. Because Matthew did establish beyond a reasonable doubt that Jamie violated the decree by refusing him communication with P.L.C. and not providing timely updates on her preschool enrollment, we affirm two of the three contempt findings. We note Jamie is now facing jail time for those contempt findings if she refuses to cooperate with Matthew on visitation and other communication issues. That sword-of-Damocles situation provides a strong incentive for her to follow the provisions of the original decree.

**MODIFICATION REVERSED; WRIT ANNULLED IN PART AND SUSTAINED IN PART.**