# IN THE COURT OF APPEALS OF IOWA

No. 20-1675
Filed June 30, 2021

IN RE THE MARRIAGE OF TIMOTHY WOLFSWINKEL
AND JESSICA WOLFSWINKEL

Upon the Petition of
TIMOTHY WOLFSWINKEL,
        Petitioner-Appellant,

And Concerning
JESSICA WOLFSWINKEL,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Richard B. Clogg,

Judge.


        Timothy Wolfswinkel appeals an order denying his request for modification

of physical care, support, and visitation.  **AFFIRMED.**


        Kodi A. Brotherson of Becker & Brotherson Law Office, Sac City, and

Christopher B. Coppola of Coppola, McConville, Carroll, Hockenberg & Flynn,

P.C., West Des Moines, for appellant.

        Andrea M. Flanagan of Flanagan Law Group, PLLC, Des Moines, for

appellee.


        Considered by Doyle, P.J., and Mullins and May, JJ.

**MAY, Judge.**

This case is about two healthy, developmentally-on-track children. Their parents are Timothy (Tim) and Jessica Wolfswinkel. Tim and Jessica divorced in 2018. Their decree has already been modified once. Tim appeals from an order denying a second modification. Tim contends the district court should have (1) granted him physical care, (2) adjusted child support, and (3) declined to order him to pay a portion of Jessica's trial attorney fees. Both parties ask for appellate attorney fees. We affirm and decline to award appellate attorney fees.

**I. Factual Background and Prior Proceedings**

Tim and Jessica were married in 2013. In March 2017, Tim petitioned for dissolution. Tim also applied for appointment of a child custody evaluator because this "matter involves allegations of serious mental health issues as well as allegations pertaining to substance abuse." The court granted the application. In May, the parties filed a stipulation and agreement on temporary matters that called for joint legal custody and joint physical care of the children. The court entered an order approving the stipulation and incorporating it by reference.

In November, the child custody evaluator filed a nineteen page, single-spaced report. It reported a wide range of details concerning the parents and the children. It addressed the parents' history of conflict, including their specific concerns about each other. As to Jessica, the report addressed allegations of substance abuse; mental-health struggles, including "aggressiveness and hostility"; making false allegations against Tim; and more. The evaluator noted that, although the parents had shared care for many months, they had not yet agreed that shared care was the best permanent solution. "Yet," the custody

evaluator noted, "both parents agree[d]" the children "seem to be doing well" under the shared care arrangement. For this and other reasons, the evaluator recommended "[t]he parents should continue to share care of the girls on an equal basis," although with the assistance of a parenting coordinator.

In July 2018, the parties stipulated the court should enter a final decree. Again, the parties agreed upon joint legal custody and joint physical care of the children. As an acknowledgment of the parties' prior difficulties, however, the stipulation also named a co-parenting coordinator and granted her broad powers to resolve disputes. The court entered a decree approving the stipulation and incorporating it by reference.

In December, the parties stipulated to a modification of the July 2018 decree. As further recognition of their prior difficulties, the parties agreed (1) to refrain from "threaten[ing], assault[ing] . . . harass[ing] or otherwise abus[ing]" each other or "their respective families, including their parents, siblings, and other family members"; (2) to refrain from "use, or attempt to use [of], physical force . . . that would reasonably be expected to cause bodily injury"; (3) to "remain a reasonable distance apart" at the children's extracurricular and school-related activities "so that there is no verbal communication with each other"; (4) to "stay away from . . . each other's respective residences"; (5) to "not be in the other party's presence except in a [c]ourtroom" or mediation; (6) both parties should be present during appointments with their co-parenting coordinator; and more. The stipulation also provided that, going forward, "[a]ll communication regarding the children shall be through [a specified] website and shall be solely used for the purposes of discussing the children and child-related issues only and no other matters shall be

discussed. The parties shall have no other communication with each other unless an emergency should arise." But the stipulation did not call for a modification of the joint custody or joint physical care arrangements. On December 19, the court entered a decree approving the modified stipulation and incorporating it by reference.

Less than seven months later, on July 3, 2019, Tim filed a petition to modify the December 2018 modified decree. Tim asked for sole legal custody and physical care of the children.

In October, a Child and Family Reporter (CFR) was appointed by the parties' stipulation. In January 2020, the parties stipulated to the CFR's recommendations on temporary matters. The recommendations did not include a change of physical care. The court entered a decree approving the stipulation and incorporated the CFR's recommendations by reference.

In July, the CFR filed her report with the court. The report centered on concerns the CFR had about Jessica. These concerns were categorized "into three main areas: (1) unfounded allegations and DHS reports[,] (2) relationship with Nick Roach,[1] and (3) mental health concerns." The CFR acknowledged that,

---

[1] As the CFR explained, Jessica "has been romantically involved, off and on, with Nick Roach." The CFR stated in her report: "To be clear, I do not believe that Nick poses any kind of physical threat to the [children], but he and Jessica have an extremely volatile relationship. . . . It seems to be that they have broken up/or reconciled more than five times since May 2019."

On appeal, Tim argues Jessica's relationship with Roach constitutes a material change in circumstances justifying a change in custody. On our own motion, we consider whether this argument was preserved. *See State v. Tidwell*, No. 13-0180, 2013 WL 6405367, at *2 (Iowa Ct. App. Dec. 5, 2013) (noting "our error preservation rules are, arguably, statutorily required" (citing Iowa Code § 602.5103(1) (2011))); *see also Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) (noting appellate courts may raise error preservation

"[d]evelopmentally, the children appear to be on track and both are healthy." Still, the CFR recommended that Tim should be awarded physical care of the children.

Following a two-day trial, the district court dismissed Tim's petition for modification and ordered him to pay $15,000 for Jessica's trial attorney fees. Tim appeals.

## II. Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). So we review each issue de novo. *See* Iowa R. App. P. 6.907. But we give weight to the fact findings of the trial court, who "is greatly helped in making a wise decision about the parties" by watching and listening to them live. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted); *see also In re Marriage of Rademacher*, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011). We will affirm unless the district court "failed to do substantial equity." *Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

---

on their own motion). For an argument to be preserved, it must be raised before—and *ruled upon by*—the district court. *See In re Marriage of Dauterive*, No. 20-0382, 2021 WL 1017121, at *1 (Iowa Ct. App. Mar. 17, 2021) (collecting cases). But Roach is not mentioned in the district court's order. "Additionally, no Iowa Rule of Civil Procedure 1.904(2) motion was filed to request the court rule on that claim to preserve error for appeal." *See In re Marriage of Bouchard*, No. 16-1256, 2017 WL 936182, at *3 (Iowa Ct. App. Mar. 8, 2017). So we conclude error was not preserved on any argument regarding Roach. The same applies to other arguments mentioned in Tim's briefs but not addressed in the district court's ruling.

**III. Analysis**

On appeal, Tim argues (1) he should be awarded physical care, (2) child support should be recalculated, and (3) he should not have been ordered to pay Jessica's trial attorney fees. Both parties ask for appellate attorney fees.

**A. Physical Care**

The real focus here is physical care. Tim requests we reverse the district court's refusal to grant him physical care. Jessica defends the court's decision.

A parent who wants to modify the physical care provisions of a decree—or, as here, a modified decree—faces a "heavy burden." *In re Marriage of Kelly*, No. 19-1295, 2020 WL 3571863, at *2 (Iowa Ct. App. July 1, 2020) (citing *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995)). First, the parent "must establish by a preponderance of the evidence that there has been a substantial change in circumstances since the . . . last modification." *Jacobo*, 526 N.W.2d at 864. "The changed circumstances [must] meet three criteria: (1) the court did not contemplate them when entering the [prior modification]; (2) they were 'more or less permanent, not temporary,' and (3) they related to the welfare of the children." *Kelly*, 2020 WL 3571863, at *2 (citing *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

If the parent crosses this first hurdle, they still face a second. The nature of this second challenge depends on the relief sought. Where, as here, a parent seeks to move the child out of joint physical care and into physical care with the requesting parent, the requesting parent must prove "superior parenting ability," that is, "an ability to minister more effectively to the children's well-being" than the

other parent. *Id.* at *3 (citation omitted); *see In re Marriage of Terrones*, No. 20-0538, 2020 WL 7021557, at *2 (Iowa Ct. App. Nov. 30, 2020).

With these principles in mind, we consider whether Tim proved the kind of substantial change necessary to justify a change in physical care. In the July 2019 petition for modification, Tim listed the following particulars as "the material and substantial change in circumstances": (1) Jessica "continuously make[s] false accusations against" Tim; (2) Jessica has "increased mental health symptoms, instability and increased substance abuse issues"; (3) Jessica "has made it extremely difficult to co-parent and continues to cause issues in violation of" court orders; and (4) Jessica's "allegations and actions are having a detrimental impact on the minor children." In his appellate brief, Tim expands this list by detailing fourteen reasons why "the parties' ability to share physical care of their children has deteriorated."[2]

Even so, the district court concluded Tim had failed to prove "a material and substantial change in circumstances, more or less permanent in nature, affecting the welfare of the children, and not contemplated by the court or the parties" at the time of their last modification. The district court acknowledged that "Jessica claims Tim has continued to bully her and make abusive comments and demands toward

---

[2] Tim notes in his appellate brief that "the parties historically had communication issues and Tim had concerns about Jessica's mental health" even before the divorce was final in July 2018. And following our de novo review, we note that a number of the reasons Tim lists in his brief either predate the prior modification or cannot be placed on the timeline of events. *See Jacobo*, 526 N.W.2d at 864. Indeed, Tim only claims the listed reasons arose "since July 2018," not since the December 2018 modification. We note also that some reasons listed by Tim were not mentioned in the district court's order and, therefore, are not preserved for review. *See Dauterive*, 2021 WL 1017121, at *1.

her [while] Tim claims Jessica has responded in a manner Tim has repeatedly identified as 'crazy' and 'unstable'" over the "two years since the [d]ecree." Yet, the court observed, there was "no evidence to support Tim's claims that Jessica has 'increased mental health symptoms, instability and increased substance abuse issues.'" Nor does Jessica have any new mental-health diagnoses. Nor, as the court noted, does she suffer from any disorder or condition "that adversely affects her ability to parent the children." Moreover, the court found, "[t]he parties continue to communicate and co-parent their children in the same way they did when the [m]odification [d]ecree was entered." Although their history of conflict is well documented, the court found, the parents are able to "co-parent as effectively as they ever have before." While the situation is "not ideal," the court observed, "there is simply insufficient evidence that there has been a material and substantial change in circumstances warranting a modification of" custody. *See Frederici*, 338 N.W.2d at 158 ("The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.").

Following our de novo review, with appropriate deference to the trial judge's first-hand observations, we agree that Tim has failed to meet his burden. As noted in our recitation of the facts, the parties' history of conflict and difficulty in communication predates their dissolution. It certainly predates their prior modification, which was essentially a no-contact order that strictly limited their channels for communication. And yet, Tim has not shown that Jessica's actions since the prior modification have made it *more* difficult for them to communicate and co-parent. Rather, as the district court found, "[t]he parties continue to

communicate and co-parent their children in the same way they did when the [m]odification [d]ecree was entered." *See In re Marriage of Christy*, No. 18-1702, 2019 WL 6893782, at *3 (Iowa Ct. App. Dec. 18, 2019) ("After all, their contentious relationship is 'merely a continuation of what came before.'" (citation omitted)). And while the parties' discord is unfortunate, it does not prevent them from making decisions and providing care for their children.[3] Nor does it rise to the level of a substantial change in circumstances from those that existed in December 2018, when their decree was last modified. *See Albertus v. Albertus*, 160 N.W. 830, 831 (Iowa 1917) ("It would be a sufficient change of circumstances within the reasoning of those cases if this alleged animosity or other unfitness were not in existence when the original decree was entered.").

Because Tim has not demonstrated the requisite change in circumstances, we need not decide whether the district was correct in concluding Tim failed to demonstrate "an ability to minister more effectively to the children's well-being" than Jessica. *See Kelly*, 2020 WL 3571863, at *3 (quoting *Frederici*, 338 N.W.2d at 158). Even so, we choose to address a question raised by both parties, namely,

---

[3] The CFR testified that she did not know of any issues involving "routine medical, vision, dental, that sort of thing." And both parents are engaged with the children's school and daycare provider. Simply put, the parties' discord is between themselves. And Tim does not provide us with evidence that the conflict "relate[s] to the welfare of the children" or prevents the parties' from making decisions on routine matters. *Frederici*, 338 N.W.2d at 158; *see In re Marriage of Hynick*, 727 N.W.2d 575, 580 (Iowa 2007) ("[T]he main distinction between joint physical care and primary physical care with liberal visitation rights is the joint decision making on routine matters required when parents share physical care."); *see also Christy*, 2019 WL 6893782, at *4 ("[W]hile the parents' relationship remains contentious, we cannot say their hostility rises to the level requiring judicial intervention. Our record shows the parents do engage in civil communication and cooperation concerning [the child]'s welfare and activities." (citation omitted)).

whether shared care continues to be in the children's best interests. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007) (noting that "[w]hen considering the issue of physical care, the child's best interest is the overriding consideration"). Despite their troubles, the parties have exercised shared physical care since shortly after Tim petitioned for dissolution in 2017. The children have become accustomed to the arrangement over the last four years. And notwithstanding the parents' interpersonal issues, the joint care arrangement appears to be working adequately for the children: As the district court found, "[b]oth girls are developmentally on track and physically and emotionally healthy." The record supports this finding, and we adopt it. All things considered, we are not convinced it would be in the children's best interests to change the custody arrangement now. *See In re Marriage of Harris*, No. 12-1969, 2013 WL 5394283, at *4 (Iowa 2013) ("Our basic framework for the best-interests physical care inquiry is well established, and stability and continuity of caregiving have been primary considerations.").

## B. Child Support and Trial Attorney Fees

Tim's arguments on amending child support and reversing the district court's order requiring him to pay Jessica's trial attorney fees hinge on him being awarded physical care. Because we affirm the district court's order continuing joint physical care, we need not address Tim's arguments further.

## C. Appellate Attorney Fees

Tim and Jessica both request attorney fees on appeal. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether

to award fees, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (internal quotation marks and citation omitted).

After considering all relevant factors, we decline to award attorney fees.

## IV. Conclusion

We find no grounds to disturb the district court's order.  We affirm.

**AFFIRMED.**